UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD V. CHARLES,<br>CDCR #K-89149,<br><br>                                        Plaintiff,<br><br>                vs.<br><br>S. AMADOR, Captain, et al.,<br><br>                                        Defendants. | Case No.  25-CV-1475-TWR (JLB)<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT PURSUANT TO 28 U.S.C. § 1915A(b)(1)**<br><br>(ECF No. 8) |

Plaintiff Leonard V. Charles is a state inmate incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983.  On March 16, 2026, the Court dismissed Plaintiff's Complaint with leave to amend for failure to state a claim upon which relief may be granted.  (ECF No. 7.)  Plaintiff then filed a First Amended Complaint.  (*See* ECF No. 8.)  For the reasons stated below, the Court **DISMISSES** Plaintiff's First Amended Complaint with leave to amend pursuant to 28 U.S.C. § 1915(A)(b)(1).

<strong>SCREENING PURSUANT TO 28 U.S.C. § 1915A</strong>

**I.     Legal Standards**

The Court must conduct an initial review of the First Amended Complaint under 28 U.S.C. § 1915A, which "mandates early review - 'before docketing () or () as soon as

- 1 -

practicable after docketing' - for all complaints 'in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'" *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016) (quoting 28 U.S.C. § 1915A(a)) (alterations in original). "'On review, the court shall . . . dismiss the complaint, or any portion of the complaint,' if it '(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.'" *Olivas v. Nevada ex rel. Dept. of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (quoting 28 U.S.C. § 1915A(b)). Screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). "The Rule 12(b)(6) standard requires a complaint to 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1138 (9th Cir. 2012).

## II.    Allegations in the First Amended Complaint

Plaintiff alleges that on June 15, 2024, he asked Defendant RJD Correctional Officer San Miguel to remove him from Facility D due to safety concerns and he was taken to a secure cell in the D Yard gym. (ECF No. 8-1 ("FAC") at 4.) San Miguel interviewed Plaintiff several hours later and told Plaintiff he could not leave the yard because Defendant Correctional Officer Rodriguez had told San Miguel that Plaintiff "had to snitch on someone in order to be housed in the hole for protection." (*Id*.) San Miguel said it "was the procedure and the only way [Plaintiff] could leave the facility." (*Id*.) Plaintiff was in a cage for hours and was cold and hungry, and "told San Miguel and by way of the Lt.

- 2 -

Rodriquez what they wanted to hear," and falsely admitted to being a spice dealer. (*Id*. at 4, 34.)

During Plaintiff's "114 lockup review," Defendant Captain Amador "threatened [Plaintiff] saying if [he] did not go to the yard she would insure [he] would receive a CDCR 115 for behavior leading to violence." (*Id*. at 4.) Plaintiff refused to go to the yard "because [he] was afraid to be jumped on for leaving." (*Id*.) He "was kept in a cold cell with no clean laundry, the smell of rank urine and feces for weeks," and was denied his property and soap. (*Id*.)

"Weeks later" Plaintiff received a CDCR 115 charging him with behavior leading to violence and was given a hearing by Defendant Martinez, who found him guilty. (*Id*.) Plaintiff's appeal was granted, and the charge was dismissed. (*Id*.) He then filed a grievance in which he explained that his safety concern arose from witnessing an inmate assault another inmate while "staff did nothing," and "that as a result of [his] restricted housing unit placement a rumor had started that [he] had snitched on Inmate Taylor, the blood's gang faction, the Mexicans, the Green Light, stg, gang faction." (*Id*. at 4–5.) Plaintiff was seen walking to an interview with Martinez, and states that Taylor and several bloods called him a snitch before and after the interview. (*Id*. at 5.) Plaintiff refused to shower or go to recreation because "Taylor and his homies would scream all day every day how [Plaintiff] snitched on him and got him caught with a knife." (*Id*.) Additionally, Plaintiff's "neighbor was a mainline blood when [Plaintiff] was housed in C section." (*Id*.) His neighbor "kicked on [Plaintiff's] cell wall for hours each and every day and night saying blood [']you a bitch snitch, trying to help a fag,[']" causing him to be unable to sleep, think or shower, and to feel intimidation, anguish and sadness. (*Id*.)

Plaintiff was later placed on a bus to be transferred to Corcoran State Prison with Taylor, who kicked Plaintiff as he walked past "and called [Plaintiff] a rat faggot lover." (*Id*.) When Plaintiff told the transportation officer he feared for his safety and could not travel with Taylor, he was told they could not stop the transport but he would be taken back to RJD. (*Id*. at 5–6.) Plaintiff spent the night at Kern Valley State Prison with only a sheet

25-CV-1475-TWR (JLB)

to keep from freezing and could not sleep due to fear of returning to RJD. (*Id*.) Back at RJD, Plaintiff was denied food while waiting hours to be interviewed and was told he would go back to the restricted housing unit until a committee decided whether to transfer him or return him to Facility D. (*Id*.) Plaintiff felt sick and was housed in a freezing cell where "the name calling did not stop." (*Id*.) He was then housed in Taylor's old cell on Facility D and harassed day and night. (*Id*.) "Weeks later" he was transferred to Facility E and "thought he was going to [get] a fresh start, a clean cell, [and his] property." (*Id*.)

Several months later Amador asked Plaintiff if he was "already selling spice on her yard." (*Id*. at 7.) Plaintiff filed a grievance regarding his property, which he had not received, and begged Amador to stop harassing him and drop the CDCR 115 charge, but she laughed. (*Id*.) Four months later, when Plaintiff saw Amador speaking to the Warden, Plaintiff told the Warden, in front of Amador, "all she sent [him] through," and the Warden replied, "this ends today." (*Id*.) Plaintiff received his property two days later. (*Id*.) However, Amador later came to Plaintiff's cell with Defendant Sergeant Meza and he was strip-searched and sat in the dayroom for five hours while his property was destroyed. (*Id*. at 9.) Amador "said she would lock [Plaintiff] up whenever she felt [he] was a threat," and Defendant Captain Lewis said Plaintiff "was on his shit list." (*Id*.)

On January 21, 2026, Plaintiff was watching television in his cell when Lewis and Defendant Captain Perez took him to the program office where he remained for five hours without food "while they tore [his] property up." (*Id*.) Several hours later, his request for food and water was denied by Lewis and "all the correctional staff." (*Id*. at 9, 11.) Plaintiff was then taken to the restricted housing unit and placed in a suicide cell without food, clothing, or a blanket, allegedly "for illicit criminal activities on E Facility," but was not given a lockup order by Lewis and had to ask staff for a copy. (*Id*. at 11.) He became distraught and contemplated suicide because he thought he had helped someone escape violence and Taylor was gone, "but the bloods kept sending word [he] was a rat," causing Plaintiff to constantly fear attack, and now he was accused of criminal activity. (*Id*.)

Five days later Plaintiff was taken to committee where he asked Lewis why he was

- 4 -

25-CV-1475-TWR (JLB)

doing this, and Lewis responded that "he was told by Amador to put [Plaintiff] on his hit list and [he] would go back to D Facility." (*Id*. at 13.)  Plaintiff told the Warden everything at the committee hearing but was sent to the restricted housing unit for thirty days with only the clothes he was wearing, without soap or hygiene products, where it was freezing cold and "people [were] screaming how [he] must be a rat fag lover." (*Id*. at 13, 15.)  When Plaintiff was interviewed by the appeals coordinator and was asked what happened with Lewis, Plaintiff stated:

> I told her on his first week of coming to E Facility he walked the yard and I was threatened by Captain Lewis and Sergeant I. Perez saying I was on his hit list.  Several days later I was interviewed by Sergeant I. Perez and asked to give up information.  I told him I don't sell spice.  I told him what information I knew and saw.  He said 3 people overdosed since I left and he would recommend I be sent back.  I went to committee the Warden told me he believed me.  He told me he would make it safe and made enemies of all the people who persecuted me and unsubstantiated all the charges Captain Lewis ordered and I. Perez documented and I would be sent to Level III A Yard pending transfer to another Level II.  I finally felt relief.  I finally got some sleep.

(*Id*. at 15.)

Plaintiff contends that Defendants Amador, San Miguel, Lewis, Martinez, Rodriguez, Meza, and Perez "put him in harms way, punishing him by putting him in restrictive housing on (2) two occasions and denying him property, depriving him of a liberty interest" without due process.  (ECF No. 8 at 3–5.)  He claims violations of his First Amendment right to be free from retaliation, his Eighth Amendment right to be free from cruel and unusual punishment, and his Fourteenth Amendment right to due process.  (*Id*. at 4.)

**III.   Discussion**

### *A.     Due Process*

Plaintiff claims he was denied due process in connection to (1) his placement in the restricted housing unit on June 15, 2024, pending disciplinary proceedings after being coerced into falsely claiming to be a spice dealer as the only way available to avoid being

sent back to D Facility where he feared assault by other inmates; (2) his placement in the restricted housing unit January 21, 2026, pending disciplinary proceedings apparently arising from suspicion of being a spice dealer on E Facility; (3) his placement or retention on D Facility and attempted transfer to another prison; and (4) the deprivation and destruction of his personal property.  (FAC at 4–15.)  "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (and) (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).  A protected liberty interest arises for a prisoner "when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Plaintiff's allegation that the disciplinary charges were wrongfully issued fails to state a claim because "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports." *Buckley v. Gomez*, 36 F.Supp.2d 1216, 1222 (S.D. Cal. 1997); *see also e.g. Gadsden v. Gehris*, No. 20cv0470-WQH (DEB), 2020 WL 5748094, at *8 (S.D. Cal. Sep. 25, 2020) ("The allegations of the filing of false disciplinary charges by itself does not state a claim under 42 U.S.C. § 1983 because federal due process protections are contained in the ensuing disciplinary proceedings themselves.")  Moreover, because Plaintiff indicates both charges were dismissed (*see* FAC at 37–38; ECF No. 8-2 at 5), he fails to allege any due process violation at all.  *Sandin*, 515 U.S. at 846; *Shotwell v. Brandt*, 2012 WL 6569402, at *2 (N.D. Cal. Dec. 17, 2012) (finding no due process violation where disciplinary charge was dismissed.)

Plaintiff's allegations regarding the temporary taking and destruction of his personal property also fails to state a due process claim because the deprivation of property by a person acting under color of state law does not constitute a due process violation if a meaningful state post-deprivation remedy is available, *Hudson v. Palmer*, 468 U.S. 517,

- 6 -

533 (1984), and because California provides an adequate post-deprivation state remedy through its Government Claims Act. *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (per curiam) (citing Cal. Gov. Code §§ 810–95). With respect to Plaintiff's transfer to another prison or between yards, prisoners have no due process right to placement in any particular prison, to any security classification, or to any particular housing assignment. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *see also Meachum v. Fano*, 427 U.S. 215, 225 (1976) (finding no liberty interest protected by the Due Process Clause is implicated in a prison's classification and transfer decisions).

Further, Plaintiff has not plausibly alleged he was deprived of a protected liberty interest with respect to his thirty-day stay in the restricted housing unit after he was charged with "illicit criminal activities on E Facility," or his brief stays there at other times, where he alleges he was temporarily deprived of warmth, food, water, clothes and soap. To determine whether an atypical and significant hardship has occurred by confinement in segregated housing, courts look to the conditions of confinement, the duration of the stay, and whether the sanction will affect the duration of the prisoner's sentence. *See Keenan v. Hall*, 83 F.3d 1083, 1088–89 (9th Cir. 1996). Ultimately, the allegations regarding the conditions in restricted housing unit and the length of his stays there fail to support a due process violation. *See Sandin*, 515 U.S. at 487 (holding that an inmate placed in disciplinary segregation in a secured housing unit for 30 days had no cognizable due process claim because he had no liberty interest in being free from such confinement); *see also May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (holding that convicted inmate was not denied due process by placement in disciplinary housing unit pending a disciplinary hearing "because he has no liberty interest in freedom from state action taken within the sentence imposed . . . and the Ninth Circuit explicitly has found that administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence.") (citation and internal quote marks omitted); *see also Anderson v. County of Kern*, 45 F.3d 1310, 1312–13 (9th Cir. 1995) (holding that short term or temporary deprivations of basic needs such as food, clothing, shelter and sanitation do not plausibly allege a constitutional

25-CV-1475-TWR (JLB)

violation).

Accordingly, Plaintiff's due process allegation is **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

### B.     *Eighth Amendment*

Plaintiff claims Defendants violated his Eighth Amendment right to be free from "cruel and unusual punishment arising from being forced to go through disciplinary proceedings which caused him to go through housing in restricted housing twice." (ECF No. 8 at 4.) "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment,'" and requires that "a prison official must have a 'sufficiently culpable state of mind,'" that is, "one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297, 302–03). The prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Here, Plaintiff alleges only temporary deprivation of warmth, sanitation, food and water during his brief stays in the restricted housing unit. Short term or temporary deprivations of food, clothing, shelter and sanitation do not plausibly allege constitutional violations. *Anderson*, 45 F.3d at 1312–13. Plaintiff also fails to plausibly allege any Defendant was aware of facts from which an inference could be drawn, or drew an inference, that the conditions in the segregated housing unit or on the yard posed an excessive risk to his health or safety and disregarded that risk. Rather, Plaintiff indicates that he refused to tell Defendants why he was afraid to return to D yard

but instead falsely claimed to be a spice dealer, and only later provided details when filing a grievance, which was granted and the charge dismissed.  (*See* FAC at 4–5, 37–38.) Further, there are no allegations that any Defendant was aware Plaintiff was in danger of assault by another inmate and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Accordingly, Plaintiff's Eighth Amendment claim is **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

### C.   *Retaliation Claim*

Finally, Plaintiff alleges he was retaliated against when he was charged with a disciplinary infraction when Rodriguez and San Miguel coerced him into falsely admitting to being a spice dealer in order to avoid being returned to D Facility where he feared for his life, which resulted in his placement in the restricted housing unit and a temporary transfer.  (FAC at 4–5.)  He also seems to allege that in retaliation for telling the Warden that Amador was harassing him, he was charged with "illicit criminal activities" on E Facility, that Amador and Meza strip-searched him and destroyed his property, and that Lewis and Perez "tore [his] property up."  (*Id*. at 7–11.)

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (2005) (footnote omitted).  A prisoner must also allege a retaliatory motive, that is, a causal connection between the adverse action and protected conduct. *Watison*, 668 F.3d at 1114.

Plaintiff has plausibly alleged an adverse action was taken against him.  *See Hines v. Gomez*, 108 F.3d 265, 268–69 (9th Cir. 1997) (disciplinary charge may constitute adverse action); *Rhodes*, 408 F.3d at 568 (confiscation of property and initiation of a prison transfer may constitute adverse action).  Plaintiff has not, however, set forth facts which plausibly allege any Defendant acted with a retaliatory motive.  *See Rhodes*, 408 F.3d at

25-CV-1475-TWR (JLB)

567 (stating a plaintiff must allege adverse action was "because of" his protected conduct). Retaliation cannot be established simply by showing adverse action took place after protected activity; there must be a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). Timing may be considered circumstantial evidence of retaliatory intent, but "timing alone is insufficient" to support an inference that prison officials took an adverse action against a prisoner in retaliation because of a prisoner's participation in protected conduct. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

Plaintiff does not plausibly allege that the decision to file the first disciplinary action after he admitted to being a spice dealer to avoid returning to D Facility was based on anything other than his admission to being a spice dealer. To the extent he claims it was in retaliation for his refusal to explain why he feared returning to D Facility—that is, refusing to give information about the assault he witnessed—Plaintiff indicates that he later provided that information in his grievance which resulted in the charge being dismissed. Thus, there is no plausible allegation that the first disciplinary proceeding was retaliatory.

As to the events on E Facility, Plaintiff alleges Amador "said she would lock [him] up whenever she felt [he] was a threat," Lewis "was told by Amador to put [him] on his hit list," Amador and Meza strip-searched him and destroyed his property, and Lewis and Perez destroyed his property and placed him in the restricted housing unit charged with "illicit criminal activities on E Facility," all apparently because they thought Plaintiff was responsible for recent overdoses because he was suspected of selling spice on E Facility. (FAC at 9–13.) Plaintiff does not identify what "illicit criminal activity" he was charged with or the basis for that charge, only that it was dismissed as unsubstantiated. (ECF No. 8-2 at 5.) Moreover, he has not alleged Defendants were acting from a retaliatory motive in suspecting he was dealing spice on Facility E, considering there are no allegations they knew he was not a spice dealer, were aware that he had repudiated his confession to dealing spice on Facility D, or were required to accept his repudiation. Although Plaintiff alleges that he told the Warden, in front of Amador, "all she sent [him] through," and begged Amador to stop harassing him and drop the disciplinary charge, (*see* FAC at 70), it is

- 10 -

unclear what harassment Plaintiff refers to or what Amador put him through at the time he spoke to the Warden. To the extent Plaintiff alleges he was on a "shit list" because Defendants wanted him off E Facility and transferred back to D Facility due to a suspicion he was a spice dealer, the First Amended Complaint lacks specific factual allegations plausibly alleging any Defendant took any action with a retaliatory motive, as opposed to acting pursuant to a legitimate suspicion Plaintiff was engaged in "illicit criminal activity" on E Facility. The First Amended Complaint is also unclear as to what actions were taken by which Defendant, such as who destroyed Plaintiff's property or delayed his receiving it and who initiated the disciplinary action on E Facility and why, as well as the basis of why Plaintiff claims those actions were retaliatory.[1]

Accordingly, Plaintiff's retaliation claim is **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

### D.    *Leave to Amend*

In light of his pro se status, the Court grants Plaintiff a final opportunity to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a *pro se* complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

### CONCLUSION

In light of the foregoing, the Court **DISMISSES WITHOUT PREJUDICE** this civil action based on Plaintiff's failure to state a claim upon which Section 1983 relief can be granted pursuant to 28 U.S.C. § 1915A(b)(1). Plaintiff **MAY FILE** a Second Amended Complaint <u>within forty-five (45) days</u> from the date of this Order.

---

[1]    If Plaintiff claims that his reporting to the Warden that Amador was harassing him was the protected activity he engaged in which caused Amador, Lewis, or Meza to search him, destroy his property, and charge him with a disciplinary infraction on E Facility, he must set forth factual allegations connecting his protected activity to their actions. Mere speculation of retaliatory motive is insufficient to give rise to a claim for relief. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) ("[M]ere speculation that defendants acted out of retaliation is not sufficient [to state a claim].")

Plaintiff's Second Amended Complaint must be complete by itself and any Defendants not named and any claims not re-alleged in the Second Amended Complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")  If Plaintiff fails to amend, the Court will dismiss this action for failure to state a claim and failure to prosecute.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED**.

Dated:  June 3, 2026

_____
Honorable Todd W. Robinson
United States District Judge

- 12 -

25-CV-1475-TWR (JLB)